In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3023

Shirley Hoffman,

Plaintiff-Appellant,

v.

Caterpillar, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 C 1062--Joe B. McDade, Chief Judge.

Argued September 6, 2000--Decided July 3, 2001


   Before Manion, Kanne, and Diane P. Wood,
Circuit Judges.

   Kanne, Circuit Judge.  Shirley Hoffman,
who was born without a left arm below the
elbow, brought suit alleging that
Caterpillar, Inc. unlawfully
discriminated against her by failing to
provide training on two machines in
violation of the Americans with
Disabilities Act (ADA), 42 U.S.C. sec.
12101 et seq./1 Hoffman alleged both
disparate treatment and failure to
accommodate claims with respect to the
first machine, the high speed scanner,
while she only alleged disparate
treatment with respect to the second, the
main console. Caterpillar moved for
summary judgment and the district court
granted the motion. For the reasons
stated herein, we affirm in part but
vacate the district court's grant of
summary judgment for Caterpillar on
Hoffman's disparate treatment claim with
respect to the high-speed scanner.

I.  History

   Hoffman began working for Caterpillar's
Optical Services Department ("OSD") in
April 1996. The OSD provides digital
scanning services to all of Caterpillar's
business units by scanning documents into
the computer and indexing them for future
reference. Hoffman's primary job
responsibility is indexing--entering data

relating to a scanned image into the computer. Her job also includes preparing papers to be scanned, maintaining the copy machine, running the flatbed scanner (a low-speed scanner), and ordering office supplies. Due to the fact that she is missing her lower left arm, Hoffman needs several accommodations to perform her job, including a typing stand, poster putty to raise the function key on her computer, and a compound called tacky finger to improve finger grip. It is also sometimes necessary for Hoffman to have the items in her work area rearranged. Although Hoffman and Caterpillar dispute the willingness with which Hoffman was initially accommodated (she claims that her repeated requests for accommodation were ignored until she was forced to bring in her own materials), it is clear that she is now able to perform the essential functions of her job. Caterpillar concedes that, with the exception of her first three weeks on the job, Hoffman's work has been average or better and that she performs her indexing job as fast or faster than a person with two hands.

   Although Hoffman already performs all of the required functions of her job, she has repeatedly expressed a desire to be trained on two additional pieces of equipment. First, Hoffman wishes to operate the high-speed scanner, a production machine that scans forty to fifty pages per minute. Operation of the high-speed scanner is a key position in the OSD because the overall productivity of the department depends on the speed at which documents are scanned. OSD employees in Hoffman's position are not required to run the high-speed scanner; out of the twenty-one people in the department as of March 1999, only seven are completely trained to operate it. Caterpillar contends that Hoffman's lack of training on the high-speed scanner does not affect her compensation, benefits, work hours, job title, or ability to advance within the OSD. Hoffman disagrees with Caterpillar's claim that the denial of training does not affect her ability to advance; she argues that she will be a more attractive candidate for promotion if she is well-trained. In addition, Hoffman maintains that she should be trained, regardless of whether it affects her ability to advance, because every other employee who

has expressed an interest in operating the high-speed scanner has received the necessary training to do so.

Hoffman's supervisor and the head of the OSD, Lynn Cripe, admits that he denied Hoffman training on the high-speed scanner because she only has one hand. He claims that her disability would prevent her from being able to properly run the high-speed scanner because two hands are needed to clear paper jams and to straighten documents as they exit the machine. Paper jams occur frequently on the high-speed scanner--sometimes four to five times an hour--disrupting production for anywhere from a few seconds to fifteen minutes depending on the severity of the jam. Cripe is concerned that Hoffman would be unable to run the machine, and even if she were able to operate it, that she would be unable to maintain an acceptable speed or clear the frequent paper jams without assistance. Although Cripe is not fully trained on the high-speed scanner himself, his observation of the machine leads him to believe that Hoffman, even if able to physically run the machine, would not be able to keep up with the production standards set for the department. Cripe also believes that the configuration of the high-speed scanner presents an obstacle to Hoffman's running of the machine because the keyboard which controls the scanner settings is located on the left side of the machine--the side on which Hoffman does not have a hand. According to Cripe, the settings need to be changed fairly quickly during scanning and it would be difficult for Hoffman to adjust the settings while continuing to feed the paper with only one arm. Cripe's belief that Hoffman would be unable to run the high-speed scanner was never confirmed, however, because Hoffman was never given a chance to try.

Hoffman also challenges Caterpillar's decision to deny her training on another piece of equipment, the main console. The main console is a computer that is used to check the accuracy of data entered for scanned documents. Caterpillar asserts that Hoffman was denied training on the main console, not because of her disability, but because the main console is operated by individuals in the reviewer position and Hoffman is not qualified for that position because she

lacks the necessary communication skills.


II.  Analysis

A.  Standard of Review

We review de novo the district court's grant of summary judgment, drawing our own conclusions of law and fact from the record before us. See Amadio v. Ford Motor Co., 238 F.3d 919, 924 (7th Cir. 2001). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether there exists any genuine issue of material fact, we must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

B.  Denial of Training on the High-Speed Scanner

Hoffman claims that Caterpillar's denial of training on the high-speed scanner violated the ADA. The ADA proscribes discrimination against a qualified individual with a disability "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. sec. 12112(a). As a threshold requirement, Hoffman must first establish that she has a disability as defined by the ADA. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. sec. 12102(2). A plaintiff must also demonstrate that she is qualified for the position in question. An individual is qualified if

she "satisfies the pre-requisites for the position" and "can perform the essential functions of the position held or desired, with or without reasonable accommodation." Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996) (quoting 29 C.F.R. app. sec. 1630.2(m)).

Once a plaintiff has established that she is a qualified individual with a disability, she may show discrimination in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate. See Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1021-22 (7th Cir. 1997). Disparate treatment claims arise from language in the ADA prohibiting covered entities from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee," 42 U.S.C. sec. 12112(b)(1), while failure to accommodate claims stem from language in the ADA defining discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. sec. 12112(b)(5)(A).

A disparate treatment claim under the ADA is similar to disparate treatment claims under Title VII, 42 U.S.C. sec. 2000e-2(a), and the ADEA, 29 U.S.C. sec. 623(a)(1) in that the plaintiff attempts to show that she was treated differently than other workers on the basis of a protected characteristic. As with other federal anti-discrimination statutes, an ADA plaintiff may prove disparate treatment either by presenting direct evidence of discrimination, or she may prove it indirectly using the McDonnell Douglas burden-shifting method. See McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In order to prevail in the absence of direct evidence, a plaintiff must first make out a prima facie case by showing that: (1) she is disabled within the meaning of the ADA; (2) she was meeting the legitimate employment expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. See Amadio v. Ford Motor Co., 238 F.3d 919, 924 (7th Cir. 2001).

In failure to accommodate claims, unlike disparate treatment claims, the McDonnell Douglas burden-shifting approach is not necessary or appropriate. See Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997). Instead, the plaintiff, in addition to showing that she is a qualified individual with a disability, must show that the employer was aware of her disability and still failed to reasonably accommodate it. See Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032 (7th Cir. 1999). Reasonable accommodations may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. sec. 12111(9).

Hoffman claims that Caterpillar's denial of training on the high-speed scanner constitutes both disparate treatment and a failure to accommodate under the ADA. Because Caterpillar does not challenge Hoffman's claim that she is a qualified individual with a disability within the meaning of the ADA, we turn first to Hoffman's disparate treatment claim.

1. Disparate Treatment

At the outset, we note that it is quite clear that Caterpillar is not obligated to train Hoffman on the high-speed scanner if she is not capable of running it. The ADA certainly does not require employers to allow employees to use equipment that they are unable to operate. Nor does anything in the ADA mandate that Caterpillar must tolerate a drop in productivity in order to allow Hoffman to run the high-speed scanner. Usually, the question of an employee's ability to perform a specific task will be decided at the outset of a disparate

treatment claim in the context of determining whether the plaintiff is "qualified" under the ADA. In situations such as this one, however, where an employee can clearly perform the essential functions of the position but alleges disparate treatment as to some non-essential function, the employee's ability to perform the task in question becomes relevant at this later stage.

Viewing the evidence in the light most favorable to Hoffman, we find that there is an issue of fact as to whether Hoffman would be able to operate the high-speed scanner. Because "Congress perceived that employers were basing employment decisions on unfounded stereotypes," Siefken v. Vill. of Arlington Heights, 65 F.3d 664, 666 (7th Cir. 1995), the ADA discourages employment decisions "'based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics.'" Holiday v. City of Chattanooga, 206 F.3d 637, 643 (6th Cir. 2000) (quoting EEOC v. Prevo's Family Mkt., Inc., 135 F.3d 1089, 1097 (6th Cir. 1998)). The ADA recognizes that a non-disabled person's instincts about the capabilities of a disabled person are often likely to be incorrect. Therefore, a determination that two-handed people use both of their hands to operate the high-speed scanner, or even a determination that most one-handed people would be unable to run it, should not be the end of an employer's inquiry. In this case, it seems doubtful that Cripe made an individualized determination as to whether Hoffman could operate the high-speed scanner because he never gave her a chance to try it. Caterpillar claims that the primary reason that Hoffman lacks the capability to run the high-speed scanner is that she would be unable to effectively clear the frequent paper jams that occur. There is evidence in the record, however, that Hoffman clears paper jams from the copy machine without assistance, and Caterpillar presents no evidence to suggest that clearing paper jams from the high-speed scanner is somehow different. Nor does Caterpillar counter Hoffman's claim that she could use her left arm in a manner similar to a flat hand to hold down the paper as it is being fed into the machine. Therefore, drawing all inferences in favor of Hoffman, we must assume that she is

physically capable of running the high-speed scanner. Thus, we move on to the substance of Hoffman's disparate treatment claim.

Hoffman's supervisor, Cripe, admits that he refused Hoffman's requests for high-speed scanner training because of her disability. Notwithstanding this admission, the district court granted summary judgment for Caterpillar. The court determined that because Hoffman failed to show that the denial of training affected her compensation, benefits, hours worked, job title, or ability to advance within Caterpillar, she had not shown a materially adverse employment action--one of the elements of the prima facie case under McDonnell Douglas. See Hoffman v. Caterpillar Inc., No. 98-1062 , slip op. at 7 (C.D. Ill. July 12, 1999) (citing Spencer v. AT&T Network Sys., No. 94 C 7788, 1998 WL 397843, at *5 (N.D. Ill. July 13, 1998) (finding that denial of training was not a materially adverse employment action because plaintiff's pay, hours, job title, and quality of her responsibilities were not significantly affected); Needy v. Vill. of Woodridge, No. 96 C 5188, 1997 WL 461093 at *6 (N.D. Ill. Aug. 8 1997) ("[D]eprivations of training opportunities do not constitute an adverse employment action under Title VII.")).

On appeal, Hoffman argues that, because she has direct evidence of discriminatory intent, the district court erred in determining that she must proceed using the McDonnell Douglas burden-shifting approach. Direct evidence is evidence which, if believed, "will prove the particular fact in question without reliance upon inference or presumption." Plair v. E. J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997) (quotation omitted). In the vast majority of disparate treatment claims, the plaintiff does not have direct evidence of discrimination on the basis of some protected characteristic. Our cases establish that making out a prima facie case using the McDonnell Douglas approach is an alternative to showing direct evidence of an employer's discriminatory intent. See, e.g., Beatty v. Wood, 204 F.3d 713, 717 (7th Cir. 2000). The purpose of the McDonnell Douglas burden-shifting approach is to allow a plaintiff

to raise an inference of discrimination even in the absence of direct evidence. See Lynch v. Belden & Co., 882 F.2d 262, 269 (7th Cir. 1989). It would be redundant to require a plaintiff to utilize the burden-shifting method to raise a presumption of discrimination if he or she possesses direct evidence of discrimination. Our determination that Hoffman need not use the McDonnell Douglas approach does not necessarily mean, however, that Hoffman need not show that she has suffered a materially adverse employment action. We must consider whether demonstrating a materially adverse employment action, aside from being an element of the prima facie case, is a separate substantive requirement of a disparate treatment claim under the ADA.

Caterpillar contends that it is clear that an alleged denial of training must materially affect an individual's employ ment for it to be actionable. However, none of the authorities that Caterpillar cites for the proposition that a denial of training must be materially adverse, see Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999); Spencer v. AT&T Network Sys., 1998 WL 397843, at *5; Needy v. Vill. of Woodridge, 1997 WL 461093, at *6, with the exception of Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000),/2 deal with denials of job training under the ADA; rather, they address failure to train claims under Title VII and the ADEA. This distinction is relevant because the ADA specifically prohibits discrimination in "regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment," 42 U.S.C. sec. 12112(a) (emphasis added), while the parallel provisions of Title VII, 42 U.S.C. sec. 2000e-2(a), and the ADEA, 29 U.S.C. sec. 623(a)(1) do not specifically include the term "job training" among the prohibited actions. If, as Caterpillar suggests, a plaintiff must show that a denial of job training was materially adverse, the inclusion of the words "job training" in the ADA are mere surplusage because it is clear that a materially adverse denial of job training would fall under the statute's prohibition of discrimination in "other terms, conditions, and

privileges of employment." 42 U.S.C. sec. 12112(a). Such a finding would violate the interpretive principle that, "every word or provision of a statute must, if possible, be given some effect." Cent. States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 942 (7th Cir. 2000).

Although we acknowledge that several of our cases contain language suggesting that an employee must always make a separate affirmative showing of a materially adverse employment action in all ADA cases, see, e.g., Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 670 (2000);/3 Moore v. J.B. Hunt Transp., Inc., 221 F.3d 944, 950 (7th Cir. 2000), none of these cases confront the issue of whether an ADA plaintiff alleging denial of job training was also required to present evidence that the denial was adverse. In addition, a close reading of our past employment cases reveals that the cases suggesting that plaintiffs must show an adverse employment action in every case are not dealing with any specifically articulated prohibition, but rather with other "terms, conditions, and privileges of employment." See, e.g., Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993) ("[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities."); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 885 (7th Cir. 1989) ("To establish a violation of the ADEA, therefore, a plaintiff must prove that she suffered a materially adverse change in the terms or conditions of her employment."). We do not require a plaintiff who is alleging discrimination with respect to hiring, discharge, or the other enumerated actions to also show that the action was materially adverse.

In Hunt v. City of Markham, 219 F.3d 649 (7th Cir. 2000), we noted that "[t]he idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." Id. at 653. While we agree that Congress did not intend the ADA to reach every bigoted act or gesture, we must believe

that Congress did intend to reach conduct that it specifically prohibited in the statute. Thus, with respect to employment actions specifically enumerated in the statute, a materially adverse employment action is not a separate substantive requirement. We agree with Hoffman that, because the ADA specifically prohibits discrimination in regard to "job training," and she has direct evidence of discriminatory intent, she need not show that the denial of training was materially adverse./4 See Lane v. Wal-Mart Stores, Inc., No. Civ. CCB-99-763, 2000 WL 1481638, at *7 n. 13 (D. Md. Aug. 28, 2000). Hoffman is not asking for special training because of her disability, on the contrary, she is merely asking for the same training that is available to all other employees who request it. Cf. Williams v. United Ins. Co. of Am., No. 00-3276, 2001 WL 624868 (7th Cir. June 7, 2001).

As a practical matter, the class of potential ADA plaintiffs affected by today's holding is quite small. Direct evidence cases, like this one, are very rare in the employment discrimination context because employers are generally very careful to avoid statements that suggest discriminatory intent--whether their true intentions are discriminatory or not. Most plaintiffs only possess indirect evidence of discrimination, and therefore must proceed using the McDonnell Douglas burden-shifting method. Even if the plaintiff is able to make out a prima facie case for a denial of training claim, the defendant will be able to avoid liability by articulating a legitimate business reason for the denial of training.

Therefore, because the ADA specifically prohibits discrimination in the area of job training and Hoffman has direct evidence of discrimination, we find that the district court erred in granting summary judgment for the defendant on this issue. In order to recover, Hoffman must show that she is physically capable of running the high-speed scanner, but she is not required to make a separate showing that the denial of training was a materially adverse employment action. Accordingly, we will remand in order to allow Hoffman to attempt to prove her disparate treatment claim for denial of training on the high-speed scanner.

## 2. Failure to Accommodate

We next turn to Hoffman's failure to accommodate claim. At issue is whether Caterpillar must accommodate Hoffman in order to allow her to operate the high-speed scanner if she is unable to do so without accommodation. As we noted above, Hoffman has already been accommodated in order to perform the essential functions of her job. She now requests (assuming she needs it) accommodation so that she may operate the high-speed scanner--a non-essential function of her position. While it is admirable that Hoffman wants to perform job tasks that Caterpillar does not require her to perform, "[i]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." Jay v. Intermet Wagner, Inc., 233 F.3d 1014, 1017 (7th Cir. 2000); see also Schmidt v. Methodist Hosp. of Ind., 89 F.3d 342, 344 (7th Cir. 1996) (stating that "[r]easonable accommodation does not require an employer to provide literally everything the disabled employee requests"). Caterpillar has chosen to accommodate Hoffman's disability by letting other employees run the high-speed scanner, and; if Caterpillar is correct that Hoffman is unable to run the high-speed scanner without assistance, we will not disturb Caterpillar's chosen method of accommodation. The ADA requires "an employer to make whatever accommodations are reasonably possible in the circumstances to perform the functions essential to his position," Miranda v. Wis. Power & Light Co., 91 F.3d 1011, 1017 (7th Cir. 1996), including removing nonessential functions from the job, see United States E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1284 (7th Cir. 1995), but nothing in the statute requires an employer to accommodate the employee so that she may perform any nonessential function that she chooses. Nor is Caterpillar required to provide an accommodation if the costs are disproportionate to the benefits. See Vande Zande v. State of Wis. Dept. of Admin., 44 F.3d 538, 542-43 (7th Cir. 1995) (holding that "an employer is not required to expend enormous sums in order to bring about a trivial improvement in the life of a disabled employee"). Therefore, we agree with the district

court's determination that Caterpillar is not required to accommodate Hoffman in running the high-speed scanner if she is unable to operate it by herself.

C.  Denial of Training on the Main Console

   Hoffman also claims that Caterpillar discriminated against her on the basis of her disability by denying her training on the main console. In response, Caterpillar maintains that operating the main console is not even part of Hoffman's indexing position. Further, Caterpillar asserts that Hoffman is not qualified for the position that is responsible for running the main console because she lacks the necessary communication and analytical skills.

   Hoffman does not have direct evidence that she was denied training on the main console because of her disability. Therefore, she must proceed by the McDonnell Douglas burden-shifting method. See McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under McDonnell Douglas, if she is successful in establishing a prima facie case, a rebuttable presumption of discrimination is created and the burden of production shifts to the defendants to present evidence of a legitimate, non-discriminatory reason for the challenged action. See Maarouf v. Walker Mfg. Co., 210 F.3d 750, 752 (7th Cir. 2000). IfCaterpillar presents evidence of a non-invidious reason for its action, the burden then shifts back to Hoffman to show that the articulated reason is in fact a pretext for discrimination. See id.

   In this case it is unclear whether Hoffman is complaining that she should have been allowed training on the main console while staying in her current position or that Caterpillar's failure to move her into the reviewer position was discriminatory. We need not determine which action Hoffman is complaining of, however, because Caterpillar has presented a legitimate, non-discriminatory reason for its action and Hoffman has made no effort to rebut it. We will deem an issue waived where the argument on appeal is undeveloped and not supported with pertinent authority. See Goren v. New Vision Intl., Inc., 156 F.3d

721, 726-27 n. 2 (7th Cir. 1998). Therefore, we affirm the district court's determination.

III.  Conclusion

For the foregoing reasons, the district court erred in requiring the plaintiff to show that the denial of training on the high-speed scanner was a materially adverse employment action. Therefore, we VACATE the district court's grant of summary judgment on Hoffman's disparate treatment claim with respect to the high-speed scanner and REMAND to allow the plaintiff to attempt to show that she is entitled to recover on this claim. We AFFIRM the district court's grant of summary judgment for Caterpillar with respect to Hoffman's failure to accommodate claim as well as her claim for discriminatory denial of training on the main console.

FOOTNOTES

/1 In the district court, Hoffman also alleged violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. sec. 623(a)(1). The district court granted summary judgment for the defendant on these claims and Hoffman does not appeal that decision here.

/2 Defendant cites Shaner v. Synthes for the proposition that a plaintiff must show that the training denied to the plaintiff was necessary to the plaintiff's current job in order to state a disparate treatment claim under the ADA. We disagree with this reading of Shaner. In Shaner, the court addressed whether a particular type of computer training was necessary for plaintiff's position solely in order to determine whether plaintiff was similarly situated to other workers who had received computer training. See Shaner, 204 F.3d at 503. The court did not discuss whether or not the denial of training was a materially adverse employment action. See id.

/3 Judge Manion's dissent cites Bekker as support for the contention that ADA plaintiffs must always make an affirmative showing of an adverse employment action. The court in Bekker, however, did not discuss the adverse action requirement because the plaintiff in that case was discharged. The only issue in Bekker was whether Humana's termination of Dr. Bekker was justified by its concern that she was under the influence of alcohol while she was on duty. See Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 671 (7th Cir. 2000).

/4 Our holding today does not suggest that any employee who is denied training of any sort will have a cause of action under the ADA. An employer may deny training to any employee for any reason, so long as that reason is not discriminatory. We believe the dissent's example of a NASA worker requesting training to be an astronaut is inapposite. Implicit in this example is the assumption that the employee is neither eligible nor qualified to be an astronaut. First of all, the ADA only protects employees who are qualified in terms of experience and ability to perform a particular job. Furthermore, to prevail in a denial of training claim, an employee must always show that she is eligible for the training in question. See Macalara v. City of Madison, 224 F.3d 727, 729 (7th Cir. 2000). Our holding today eviscerates neither of these requirements. It is clear that Hoffman is qualified for her job, and that she is eligible for the requested training. We also believe that the dissent's example attempts to blur the line between failure to train and failure to promote claims. The employee in the NASA example is not asking for training so she can perform her current job, but is actually asking to be placed in a different position, i.e. to be promoted. In Hoffman's case, it is clear that she is asking for training pertinent to the job she has now, not for some job she aspires to. Moreover, we disagree with the suggestion that our holding requires employers to train now and ask questions--i.e., can the employee adequately perform the task at issue--later. On the contrary, our discussion in Part B.1. makes it clear that an employer is not required to provide training for a task that the employee is unable to perform. Our decision today does not change the timing of the inquiry into the employee's ability, it simply requires that the employer actually make the inquiry.


MANION, Circuit Judge, dissenting. Although Shirley Hoffman was born without a left arm below the elbow, with certain accommodations she has competently performed her job in the Optical Services Department at Caterpillar. Among other tasks, she operates a low-speed scanner. She has requested several times to be trained on the high-speed scanner but her supervisor has denied such training because she has only one hand. The question before us is whether denying her this training because she is disabled, even though it is clear that not being so trained will not affect her salary or her ability to advance, is a violation of the ADA. Because the district court properly concluded that Hoffman did not

present sufficient evidence to support a triable issue of fact that she suffered a materially adverse employment action, I respectfully dissent.

As a preliminary matter, under the ADA, Hoffman was required to show that she suffered an adverse employment action. Whether she presents direct evidence of disability discrimination, or proceeds under the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), she must show all three of the following elements to establish her disparate treatment claim: (1) that she is disabled within the meaning of the ADA; (2) that she is qualified to perform the essential functions of her job either with or without reasonable accommodation; and that (3) she suffered from an adverse employment action because of her disability. Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 670 (7th Cir. 2000). Thus, a plaintiff bringing a disparate treatment claim under the ADA must always establish that she suffered an adverse employment action. And for Hoffman to survive summary judgment in this case, she must present evidence to support a genuine issue of fact that her employer's denial of her request to be trained on the high-speed scanner and the main console was an adverse employment action. She has not done that, and the court is not enforcing that requirement. The court implies that the mere denial of training is per se an adverse employment action, but there is no authority for that position.

Furthermore, even though Hoffman alleged that she suffered one of the categories of discrimination specifically enumerated in 42 U.S.C. sec. 12112(a) (i.e., denial of job training), she is still required to show that the denial of training was an adverse action./1 To illustrate, take an extreme example. Suppose someone with Hoffman's disability works at NASA, where she has been reasonably accommodated in a job in which she monitors flights. Although she did quality work and was doing well in her career, she always wanted to see if she could qualify to be an astronaut; after all, other NASA employees with similar background and experience had been selected for astronaut training./2 And it would be a notable achievement for a person with her condition. So she asks her supervisor for the opportunity for training as an astronaut, and her supervisor denies the request, saying: "I can't approve your request because you're disabled." According to this court's decision, that employee has a claim under the ADA, even though she clearly did not suffer a materially adverse change in her current career and employment conditions. The law does not go that far. A denial of training, without more, cannot be

labeled an adverse action that violates the ADA./3

Because "'adverse actions can come in many shapes and sizes,'" Oest v. Illinois Dep't. of Corrections, 240 F.3d 605, 613 (7th Cir. 2001) (quoting Knox v. State of Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996)), we must consider the particular facts of this case to determine whether Hoffman has suffered a materially adverse employment action. She has not. The district court properly granted summary judgment because Hoffman failed to show that the denial of her request for training was an adverse action. Another piece of equipment where she wanted training, the main console, was related to an entirely different job. And less than one-third of the employees in Hoffman's department were required to operate the high-speed scanner. Work at the main console and the high-speed scanner differs from the work she performs at her current position. Hoffman has retained the same pay and position and has lost no benefits, seniority or material responsibilities. Moreover, Hoffman did not show that her lack of training at the high-speed scanner and main console prevented her from being considered for advancement opportunities. Operating the high-speed scanner was not a necessary step for advancement. Caterpillar also presented evidence that it promoted other employees who lacked such training.

Hoffman needed to show that she suffered an adverse action to survive summary judgment on her disparate treatment claim. Simply showing that she was denied job training, a category where the statute specifically prohibits discrimination, is not enough. Because Hoffman has not shown that she suffered an adverse employment action, I would affirm the district court.

FOOTNOTES

/1 The court cites only to a footnote in Lane v. Wal-Mart Stores, Inc., No. Civ. CCB-99-763, 2000 WL 1481638, at *7 n. 13 (D. Md. Aug. 28, 2000), an opinion from the district court of Maryland, and that footnote cites only generally to the ADA statute. See contra Atkinson v. Wiley Sanders Truck Lines, Inc., 45 F.Supp.2d 1288, 1294 (M.D. Ala. 1998) (it was not an adverse employment action to deny an employee's request to participate in a training course because of the employee's disability).

/2 Similar to the hypothetical NASA employee, Hoffman aspires to be trained on two machines that her current position does not require her to operate. Although the court states in footnote 4 of its decision that Hoffman is seeking training

"pertinent to the job she has now," the court has also acknowledged throughout its decision that "Hoffman already performs all of the required functions of her job"; that "OSD employees in Hoffman's position are not required to run the high-speed scanner"; and that the high-speed scanner is "a non-essential function of her position." We also note that unlike the plaintiff in Williams v. United Ins. Co. of Am., 00-3276, 2001 WL 624868 (7th Cir. June 7, 2001), Hoffman does not direct us to anything in the record that indicates that training on the high-speed scanner was made available to all of the employees in her department. Such training was not necessary for promotion or advancement, and it is undisputed that less than a third of the employees in Hoffman's department have received such training.

/3 As the court notes (Part B.2, p. 15), if Caterpillar is correct that Hoffman is unable to run the high-speed scanner without assistance, it will not disturb the decision to "accommodate Hoffman's disability by letting other employees run the high-speed scanner." But the only way Caterpillar can be "correct" is to first train her on the scanner and then, with training completed, determine whether she can operate it satisfactorily. This could be a costly experiment when she has suffered no adverse action in her present job.