**James W. CRAIG, Plaintiff–Appellant,**

v.

**John E. POTTER, Postmaster General, Defendant–Appellee.**

No. 03–2529.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 2004.

Decided Feb. 20, 2004.

Chris K. Starkey, Reuben Law Offices, Indianapolis, IN, for Plaintiff–Appellant.

Deborah M. Leonard, Office of the United States Attorney, Fort Wayne, IN, for Defendant–Appellee.

Before FLAUM, Chief Judge, MANION, and EVANS, Circuit Judges.

ORDER

James W. Craig appeals from the district court's entry of summary judgment in favor of the Postmaster General, John E. Potter, regarding Craig's claim that the United States Postal Service ("the Service") violated the Rehabilitation Act, 29 U.S.C. § 794(d) by failing to reasonably accommodate his disability by reassigning him to a position as a permanent postmaster. Because the accommodation that Craig proposes would not have been reasonable, the Service did not violate the Rehabilitation Act by failing to provide it. We therefore affirm.

The facts are not in dispute. Craig was a letter carrier for the Service from 1971 until January 1992, when he was diagnosed with multiple sclerosis and could no longer perform that job, even with a reasonable accommodation for his condition. The Service, in order to accommodate Craig, detailed him from his home office in South Whitley, Indiana to serve as the acting postmaster at a one-man post office in Petroleum, Indiana. One complication of this arrangement was that Craig's position as a letter carrier was controlled by a collective bargaining agreement ("CBA") between the Service and the National Association of Letter Carriers, and seniority controlled promotion under the CBA. The position of postmaster, by contrast, was not controlled by a CBA. Subject to limited exceptions, those positions were permanently filled on a competitive basis, with the person best qualified getting the job. Positions as letter carriers and postmasters also had differing pay grades and levels.

Initially, the Service overcame this obstacle by making Craig only the *acting* postmaster, which allowed him, under the CBA, to maintain the pay and benefits he earned as a letter carrier and entitled him to a mileage allotment. Thus Craig's total compensation was equivalent to what he would have earned in the pay grade and level applicable to a permanent postmaster assigned to the Petroleum office. Although Craig's multiple sclerosis only allowed him to work six hours a day and forced him to rest periodically on a couch in the office, he was able to serve as acting postmaster in Petroleum because that office averaged only 30 customers a day and had average daily sales of less than $50.00. Thus, in deference to his disability, the Service placed Craig in an unusually generous "temporary" position for roughly seven years, from 1992 through 1999, until he went on extended sick leave.

As well as this arrangement·worked for Craig, it was labeled temporary because the Service had been trying to close the Petroleum office and consolidate it with another facility. During the 1997–98 legislative term, however, Congress passed legislation mandating that small offices like Petroleum be kept open. The Service therefore decided that Petroleum needed a permanent postmaster. To make matters worse, from Craig's perspective, the Service evaluated the pay level for its new, permanent postmaster at Petroleum and concluded that it should be downgraded because of the small volume of business the Petroleum office conducted. Craig was not interested in working at the Petroleum office because that would have meant a prospective drop of about $13,000 in annual pay and the loss of the mileage compensation. The Service then posted a public vacancy for the position in October 1998. At roughly the same time, the Service posted three other vacancies for the positions of postmaster in Liberty Center, Yoder, and Zanesville, Indiana, each of which commanded more pay than the Petroleum position.

Craig soon applied for all three positions. He was not selected, however, because he failed to complete the applications correctly. In June 1999, the Service posted an opening at the position of postmaster in Uniondale, Indiana, and Craig submitted a correct application for that job. Before the Service reached a decision on the Uniondale position, Craig's new boss, Dawn Partridge, offered him the permanent Petroleum position, giving him ten days to decide. On June 23, 1999, Craig wrote a letter in which he (1) declined the Petroleum job; (2) withdrew his application for the Uniondale position; and (3) sought a light-duty position. Partridge responded by asking Craig to provide a light-duty position certificate from his doc-

tor, which Craig did in July 1999. Partridge determined that the Service had no such position available, and she again offered Craig the Petroleum position. Unsuccessful talks between Craig and the Service dragged on for a few months. In October 1999 he went on sick leave, keeping that status until May 2001, at which time he was granted disability retirement. In November 2001, Craig filed this suit, alleging that, by failing to reassign him to a postmaster position in Liberty Center, Yoder, Zanesville, Uniondale, or Petroleum (the latter at higher pay than authorized), the Service violated the Rehabilitation Act, 29 U.S.C. § 794(d), as clarified by one of its implementing regulations, 29 C.F.R. § 1614.203(g) (1998).

This court reviews the district court's grant of summary judgment *de novo*, construing all facts in favor of the nonmoving party. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir.2003). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Here, as noted above, the relevant facts are not in dispute, so our function is purely one of law: we must simply determine the legal significance of the facts.

In a failure-to-accommodate case, the plaintiff must show that (1) he is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate that disability. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir.2001).[1] The parties agree that the first two elements exist, so the determinative question is whether Craig put forth competent evidence that the Service failed to reasonably accommodate his disability.

Both parties agree that the only possible accommodation was reassignment. Depending on the facts of any given situation, reassignment to a vacant position might be one form of accommodation. *See, e.g., Lee v. City of Salem*, 259 F.3d 667, 673 (7th Cir.2001); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374 (7th Cir.2000). Moreover, under the controlling regulation implementing the Rehabilitation Act at the time relevant to this case,[2] reassignment was required with some exceptions, 29 C.F.R. § 1614.203(g) (1998). Unfortunately for Craig, this case presents one of the exceptions. Section 1614.203(g) stated that

> When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and *at the same grade or level*, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program. (emphasis added)

---

1. Although *Hoffman* involved the Americans with Disabilities Act ("ADA"), in the employment context a failure-to-accommodate claim is the same under both statutes and we look to the standards of the ADA when evaluating a claim under the Rehabilitation Act. 29 U.S.C. § 794(d) (2000).

2. "[W]e must interpret the law as it existed at the time the dispute arose." *Thomas v. Law Firm of Simpson & Cybak*, 354 F.3d 696, 699 n. 2 (7th Cir.), *vacated by* 2004 WL 242950 (7th Cir. Feb.10, 2004).

Section 1614.203(g), it is clear, applied only where there was a "funded vacant position ... at the same grade or level" as the plaintiff's current position. The postmaster jobs to which Craig argues he should have been assigned were in a pay grade and level different from Craig's; those grades or levels were applicable only to a non-bargaining unit employee, and not to an employee under the CBA. Therefore, § 1614.203(g) does not apply to Craig.

This appeal thus turns on whether the Rehabilitation Act, interpreted without reference to § 1614.203(g), required the Service to make Craig a permanent postmaster as a form of reasonable accommodation. As noted above, the Service's policy, subject to exceptions, was to hire only the best-qualified applicant to fill a position as permanent postmaster. Although the parties seem to agree that Craig was at least minimally qualified to be a postmaster, Craig does not point to evidence showing, or even argue, that he was the *best-qualified* candidate for any of the postmaster positions to which, he argues, the Service should have transferred him.[3] Instead, he contends that it does not matter whether he was the best-qualified applicant, or even whether he applied at all, because the Rehabilitation Act's reasonable-accommodation requirement mandated the Service to leap-frog him over better-qualified candidates. As Craig puts it, he "had an absolute entitlement to one of" the postmaster positions. Not so: forcing the Service to abandon its policy of hiring the best-qualified applicant in order to accommodate a disabled employee would be unreasonable. *EEOC v. Humiston–Keeling, Inc.,* 227 F.3d 1024, 1028–29 (7th Cir. 2000); *see also Gile,* 213 F.3d at 375 (stating that the obligation to accommodate

reasonably does not mean that employers must "bump" another employee or create a new position).

Craig also contends that there were several exceptions to the Service's policy of hiring the best-qualified candidate to be postmaster and that he should have been reasonably accommodated pursuant to one of the exceptions. Each of these exceptions, however, applied only to non-posted positions, and not to any of the posted openings to which Craig argues that he should have been assigned as a form of reasonable accommodation. Moreover, the only one of the exceptions Craig cites that could possibly have applied to him allowed noncompetitive hiring of "persons with severe disabilities, as defined by Handbook EL–311." According to Craig, there is at least an issue of material fact as to whether he was such a person. Yet, even as Craig so argues, he points to no evidence in the record that would allow a jury to conclude that he was a person with a *severe* disability "as defined by Handbook EL–311" and thus within the ambit of the exception. Craig's contention that he was entitled to a postmaster position under one of the Service's exceptions to the best-qualified rule therefore fails. *See* Fed. R.App. P. 28(a)(9)(A).

We agree with the district court that the Service was entitled to judgment as a matter of law because no jury could conclude that the Service failed to provide him with a reasonable accommodation.

**AFFIRMED.**

---

3. Craig seems to have been the only remaining candidate for the Petroleum position, but he rejected that job at the pay level at which it was then offered, and he (sensibly) does not develop the argument that an increase in Petroleum's authorized pay level for a postmaster was required to accommodate his disability.