2021 IL App (1st) 192303-U

No. 1-19-2303

Order filed August 12, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARSHALL SPIEGEL, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, THE | ) | Charge No. 2018 CH 1812 |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| 1618 SHERIDAN ROAD CONDOMINIUM | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Respondents. | ) | |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Illinois Human Rights Commission did not abuse its discretion when it sustained the dismissal of a resident's housing discrimination charge against a condominium association for denying his request to leave his chair at the condominium's pool overnight as a reasonable accommodation based on his physical disability.

¶ 2     Respondent 1618 Sheridan Road Condominium Association (Association) denied petitioner Marshall Spiegel's request that he be allowed to leave his chair at the condominium's pool overnight as a reasonable accommodation for his physical disability. Spiegel filed charges of housing discrimination and retaliation against the Association with the respondent Illinois Department of Human Rights (Department) under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)). After an investigation, the Department dismissed Spiegel's discrimination charge for lack of jurisdiction and, alternatively, for lack of substantial evidence to support the claim. The Department also dismissed his retaliation claim for lack of substantial evidence to support it.

¶ 3     Spiegel timely requested a review by the respondent Illinois Human Rights Commission (Commission), which sustained the dismissal.

¶ 4     On direct administrative review, Spiegel argues that (1) he timely filed his discrimination charge, (2) the Commission applied the wrong standard of review to that charge, (3) the Department improperly rebutted expert testimony regarding Spiegel's medical condition, and (4) his request to leave his chair by the pool overnight was a reasonable accommodation.

¶ 5     For the reasons that follow, we affirm the administrative decision of the Commission that sustained the Department's dismissal of Spiegel's charge of discrimination based on the lack of substantial evidence to support the charge.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6                                I. BACKGROUND

¶ 7     In March 2018, Spiegel filed with the Department a charge of discrimination, alleging that the Association failed to allow a reasonable accommodation for his disability by refusing to allow him to keep and use an orthopedic chair at the condominium building's pool. In a later amendment to his charge, Spiegel alleged that the Association retaliated against him for filing his charge by proposing a change to the pool's seasonal opening and closing dates. The Department investigated Spiegel's charge and issued a report summarizing the evidence that it uncovered.

¶ 8     The evidence established that the Association oversaw an eight-unit condominium complex, in which Spiegel was an owner. He had a physical disability, related to either his prostate or his neck and back. His doctors recommended that he use an orthopedic chair.

¶ 9     In May 2016, the Association implemented a rule that condo owners could "bring furniture, floatation devices, etc. to the pool area for their own use but they must remove these items daily when they leave the pool area." Spiegel filed lawsuits in state and federal court, which were in part related to this rule, alleging various types of illegal discrimination. He later voluntarily dismissed both actions.

¶ 10    In August 2016, a condo building tenant complained to the Association that Spiegel was leaving his chair by the pool overnight. Two days later, the Association issued a citation to Spiegel for violating the rule. In February 2017, the Association denied Spiegel's request to leave his chair at the pool when he was not present. However, the Association asked him to submit further information from a doctor to support his need to keep the chair there overnight and any other limitations.

¶ 11    In July 2017, the Association provisionally allowed Spiegel to leave his chair at the pool overnight, but it again requested further clarification by August 7, 2017. Specifically, the Association requested independent, third-party certifications of the following: (1) a doctor's recommendation that the chair was medically necessary for Spiegel's physical disability, (2) confirmation that the chair he was using was in fact an orthopedic lounge chair, and (3) the weight of the chair.

¶ 12    Spiegel submitted three letters from doctors. One doctor's letter indicated that Spiegel's disability required the "use of an appropriate chair to accommodate his disability[.]" A second doctor's letter stated that he had recommended that Spiegel use an orthopedic lounge chair for his neck and back issues and also that he not lift "equipment or materials over 15 pounds." And a third doctor's letter stated that Spiegel's "anti-gravity chair helps his prostate condition[.]" Spiegel's attorney also wrote a letter to the Association, stating that Spiegel had provided the Association with three letters from doctors recommending the orthopedic chair. The attorney also claimed that "Spiegel's disability precludes him from removing the chair from the pool daily, without risk of severe injury."

¶ 13    On October 11, 2017, the Association issued a letter that rescinded Spiegel's provisional accommodation of leaving his chair at the pool, effective with the pool's October 16, 2017 seasonal closing date, because he had not provided the information the Association had requested in its July 2017 letter. The Association noted that the doctors' letters either did "not clearly address [his] situation and need for [a] certain type of chair and any weight limitations" or were from doctors who had previously offered letters and were not independent third parties. The Association stated

that it would reconsider the matter if Spiegel "furnishe[d] all the documents as requested." Spiegel made no further accommodation requests to leave his chair at the pool overnight.

¶ 14    On March 19, 2018, Spiegel filed with the Department his charge of housing discrimination against the Association, alleging that it failed to accommodate his disability and subjected him to discriminatory terms and conditions in violation of the Act.

¶ 15    In June 2018, the Association proposed a change to the pool's opening and closing dates, from May 1 through October 15 to "later in May" through the end of September. Spiegel believed that this change was proposed as retaliation for his filing a charge of discrimination, so he amended his charge to add a claim of retaliation. However, according to the Association's president, the proposed rule was intended to save money, was never voted on, and did not go into effect.

¶ 16    The Department dismissed Spiegel's charge of discrimination. The Department dismissed the accommodation claim for a lack of jurisdiction and lack of substantial evidence supporting it. Specifically, the Department concluded that the denial of an accommodation occurred on August 26, 2016, when Spiegel was cited for leaving his chair overnight at the pool, rendering his March 19, 2018 filing date beyond the one-year statutory filing deadline. Furthermore, even if the accommodation denial occurred on February 9, 2017, Spiegel's claim was still untimely. In the alternative, the Department determined that there was not substantial evidence to support a *prima facie* case of a civil rights violation against the Association when it declined to allow Spiegel to leave his chair at the pool overnight. The Department also dismissed Spiegel's retaliation claim, which was based on the proposed change to the pool's opening and closing dates, for lack of substantial evidence supporting it. It was uncontested that Spiegel was involved in protected

activity when he filed his charge of discrimination, but no retaliatory act occurred because the proposed rule never took effect.

¶ 17     Spiegel filed a request with the Commission to review the Department's dismissal of his charge. He argued that the Department's timeliness determination was wrong because he now considered the Association's October 2017 letter, in which it rescinded the temporary accommodation of leaving the chair by the pool overnight, to be the date of the adverse action. He also contested the determination that he had not provided the Association with the documents that it asked for to support his accommodation request. He attached the three doctors' letters that he had originally sent to the Association, and included a fourth letter from a doctor, dated October 16, 2017, which stated that his chair met "the requirements for what was recommended to support his long-standing neck and back complaints."

¶ 18     In response, the Department contended that the accommodation claim was untimely because his March 19, 2018 charge was filed more than one year after the alleged harm, which occurred on June 3, 2016, the date on which he filed his lawsuit over the pool rule in state court. The Department also argued that the charge was untimely under Spiegel's other alleged adverse action date of February 9, 2017, the date the Association issued the rule violation citation to Spiegel. In the alternative, the Department argued that there was a lack of substantial evidence supporting the accommodation claim because the Association had allowed for a temporary accommodation and no evidence showed that leaving the chair at the pool overnight was necessary to alleviate symptoms of his disability. Finally, the Department defended the dismissal of the retaliation claim for lack of substantial evidence based on the fact that the pool's opening and closing dates never changed and the proposed change did not target Spiegel.

¶ 19 The Commission sustained the Department's dismissal of Spiegel's charge. Specifically, the Commission sustained the dismissal of the accommodation claim for lack of jurisdiction because Spiegel learned on October 11, 2017, that the Association would not allow an exception to the pool rule, but he did not file his charge until March 19, 2018, which the Commission (incorrectly) stated was beyond the one-year statutory filing deadline. The Commission determined, in the alternative, that there was not substantial evidence to support a *prima facie* case for his accommodation claim because Spiegel did not establish that the accommodation of leaving his chair at the pool overnight was either reasonable or necessary to alleviate his disability.

¶ 20 Finally, the Commission sustained the dismissal of the retaliation claim based on the proposed change to the pool's opening and closing dates because no evidence showed that the proposed change discriminated against disabled people or that it took effect.

¶ 21 Spiegel petitioned this court for direct administrative review of the Commission's final administrative decision.

¶ 22                                   II. ANALYSIS

¶ 23 Spiegel abandoned his retaliation claim by not raising any arguments concerning its dismissal either before the Commission or in his opening brief before this court. See *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) ("[F]ailure to argue a point in the [petitioner's] opening brief results in forfeiture of the issue."); *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 66 (arguments not raised before administrative agency were forfeited). Thus, the only issue presented in this direct administrative review action is the dismissal of the accommodation claim.

¶ 24    Spiegel argues that (1) he timely filed his discrimination charge, (2) the Commission applied the wrong standard of review to that charge, (3) the Department improperly rebutted expert testimony regarding Spiegel's medical condition, and (4) his request to leave his chair by the pool overnight was a reasonable accommodation.

¶ 25    The Association argues that the Commission's decision was not an abuse of discretion, Spiegel's arguments on appeal are frivolous, legally unsound or irrelevant, and his accommodation charge was untimely.

¶ 26    The Department and Commission argue that this court should affirm the Commission's decision on its alternative basis for dismissing the accommodation claim for lack of substantial evidence because no evidence showed that Spiegel's requested accommodation—leaving his chair at the pool overnight—was reasonable or necessary to alleviate any symptom of his physical disability. The Department and Commission acknowledge that although the Commission also determined that the accommodation claim was untimely, the dates referenced the Commission's final order establish that the claim was timely; *i.e.*, the October 11, 2017 last adverse action date and March 19, 2018 filing date were within one year of each other.

¶ 27    Furthermore, the Department and Commission argue that this court should dismiss this direct administrative review action before reaching the merits because Spiegel's brief on appeal does not comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018). See *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 22 ("[A]ppellants who have failed to comply with Rule 341 have seen their contentions waived, briefs stricken, and appeals dismissed.").

¶ 28    We agree with the Department and Commission that Spiegel's one-and-a-half-page Statement of Facts fails to "contain the facts necessary to an understanding of the case, stated

accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal," as required by Illinois Supreme Court Rule 341(h)(6). Spiegel also fails to describe either the Commission's decision, which is the decision on review, or the evidence underlying that decision. Furthermore, Spiegel's Argument section of his brief fails to identify the particular determinations in the Commission's decision with which he disagrees, in violation of Illinois Supreme Court Rule 341(h)(7). Spiegel's failure to identify those portions of the decision with which he disagrees is a failure to present "a well-reasoned theory" for reversal, meriting forfeiture. See *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54. However, despite the deficiencies of Spiegel's brief, we will address the merits of his appeal in the interests of justice.

¶ 29    The Act prohibits various types of discrimination and provides a framework for the Department to investigate charges of discrimination and, in certain circumstances, for the Commission to adjudicate them. See 775 ILCS 5/1 *et seq*. (West 2018). Article 3 of the Act, relevant here, prohibits discrimination in various real estate contexts. *Id*. § 5/3-102.

¶ 30    When a timely charge is filed, the Department investigates to "determine whether there is substantial evidence that the alleged civil rights violation has been committed[.]" *Id*. § 5/7B-102(D)(2). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id*. § 5/7A-102(D)(2). Speculation and conjecture do not meet this evidentiary standard. *Willis v. Illinois Department of Human Rights*, 307 Ill. App. 3d 317, 326 (1999). Substantial evidence decisions are "essentially prosecutorial, *i.e.*, whether there is sufficient evidence to prosecute the charge." *Pence v. Illinois Human Rights Comm'n*, 2020 IL

App (3d) 190384, ¶ 27. Given the nature of the inquiry, the Department does not make credibility determinations or resolve factual disputes at this stage. See 56 Ill. Admin. Code § 2520.430(f).

¶ 31     If the Department determines that there is not substantial evidence to support a charge, it must dismiss it. 775 ILCS 5/7B-102(D)(2)(a) (West 2018). The complainant may then request that the Commission review the dismissal (*id*.), which Spiegel did.

¶ 32     On administrative review this court reviews the decision of the Commission, not the Department. *Id*. § 5/8-111(B)(1); *Deen v. Lustig*, 337 Ill. App. 3d 294, 302 (2003). That decision is reviewed only for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 32-33. Under this extremely deferential standard, the Commission's decision will not be disturbed unless it is arbitrary and capricious. *Id.* ¶ 33. A decision is arbitrary and capricious if it contravenes the General Assembly's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. *Id*. The Commission abuses its discretion only where no reasonable person could agree with its decision. *Id*.

¶ 33     It is a civil rights violation under the Act "to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 775 ILCS 5/3-102.1(C)(2) (West 2018). In interpreting the Act, the Department, Commission, and Illinois courts look to federal discrimination law to determine whether housing discrimination has occurred, given the similar language and intent. *Turner v. Human Rights Comm'n*, 177 Ill. App. 3d 476, 486-87 (1988) (noting "the Act is similar in language and intent to the Fair Housing Act"); *Wirtz Realty Corp. v. Freund*, 308 Ill. App. 3d 866, 877 (1999) (using federal precedent where provision of Act was "nearly identical to" federal analog). Section 3-102.1(C)(2) of the Act, at issue here, is nearly

identical to section 3604(f)(3)(B) of the Fair Housing Act. Compare 42 U.S.C. § 3604(f)(3)(B) (2018) with 775 ILCS 5/3-102.1(C)(2) (West 2018). Thus, substantial evidence of a *prima facie* violation of section 3-102.1(C)(2) of the Act required that there be more than a scintilla of evidence showing that the Association breached its duty to accommodate Spiegel's disability because the "accommodation (1) is reasonable, and (2) necessary, (3) to afford [him] the equal opportunity to use and enjoy a dwelling." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002).

¶ 34 Whether a requested accommodation is reasonable is a "highly fact specific inquiry and requires balancing the needs of the parties." *Valencia v. City of Springfield*, 883 F.3d 959, 968 (7th Cir. 2018). A reasonable accommodation is one that is "efficacious and proportional to the" cost of implementation and does not impose "undue financial or administrative burdens or [require] a fundamental alteration" to the object of the requested accommodation. *Id.*

¶ 35 Evaluating the necessity of a particular accommodation is "a causation inquiry." *Wisconsin Community Services v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). "Whether the requested accommodation is necessary requires a showing that the desired accommodation will affirmatively enhance a disabled [complainant]'s quality of life by ameliorating the effects of the disability." *Valencia*, 883 F.3d at 968 (7th Cir. 2018). The " 'equal opportunity' element limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified." *Id.* Rather, the Act requires only those accommodations that ameliorate the effects of complainant's disability so that he is not disadvantaged by reason of the disability, not of what he has in common with other people. *Id.*

¶ 36    The Commission determined that there was a lack of substantial evidence showing that leaving the chair at the pool overnight was reasonable or necessary to accommodate Spiegel's disability so that he could have an equal opportunity to use the pool area. That decision was not an abuse of discretion because no evidence showed that the symptoms of Spiegel's physical disability were ameliorated by leaving the chair at the pool overnight. None of the doctors' letters that Spiegel presented to the Association confirmed that his disability required that he leave his chair by the pool overnight to alleviate his disability symptoms so that he could use the pool area like any other pool user. Although those doctors' letters recommended the use of a certain chair and that he not lift anything over 15 pounds, they did not explain why Spiegel's disability required that he not move his chair or that it stay at the pool overnight.

¶ 37    Spiegel provides no persuasive basis to reverse the Commission's decision. Although he argues that the Commission employed the wrong legal standards in its decision, which are legal errors reviewed *de novo*, he does not identify a misapplied legal standard in the Commission's decision.

¶ 38    He also argues that the Commission improperly went beyond determining whether substantial evidence supported his charge when it determined that he did not establish a *prima facie* case of an accommodation claim. This argument lacks merit. Both the evidentiary standard and elements of a *prima facie* civil rights violation are necessary components of a substantial evidence determination. Here, the Commission determined that "[t]he evidence was insufficient to establish" (*i.e.*, there was not substantial evidence to support) "a *prima facie* case of failure to accommodate a disability" (*i.e.*, the legal elements of his charge). In other words, Spiegel did not meet the low evidentiary threshold showing that he could further litigate the merits before the

Commission. The Commission therefore did not improperly exceed the scope of its review when it evaluated whether substantial evidence supported a *prima facie* case of an accommodation claim.

¶ 39    Next, Spiegel argues that the burden shifting analysis from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), which is a three-step analysis that is applied to disparate treatment discrimination claims under the Act and looks to the motive of an alleged discriminatory action (see *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989)), is inapplicable because no facts are in dispute. This argument is irrelevant. The Commission's decision contains no burden shifting analysis, which is not necessary or appropriate for accommodation claims because they are about the reasonableness of an accommodation, not the motivations behind the disparate treatment of disabled and non-disabled individuals. See *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

¶ 40    Spiegel's remaining contentions that ostensibly attack the merits of the Commission's decision are unavailing. He argues that this court should find that the Department or Commission improperly rebutted the doctors' recommendations that his disability required the use of his chair. But no part of the Commission's decision rebuts a doctor's recommendation. Instead, the Commission properly determined that the doctors' letters did not address the issue of whether it was reasonable or necessary for Spiegel to leave his chair at the pool overnight so that he could have an equal opportunity to use the pool area.

¶ 41    Spiegel also incorrectly states that "the Commission never argued [his] request was unreasonable." In fact, the Commission determined that he "did not establish that the accommodation of leaving his chair overnight at the pool was reasonable on its face." Again, the

requested accommodation of leaving the chair at the pool overnight was unconnected to alleviating any disability symptoms, whether based on his prostate or neck and back.

¶ 42    Spiegel also claims without support that his request to leave his chair at the pool is a reasonable accommodation "because he was unable to carry it back and forth daily." No evidence supports that claim. Since the beginning, the Association requested yet received no evidence connecting this claim to the symptoms of a disability. And that was why the Commission determined that there was no evidence showing that leaving the chair at the pool overnight had anything to do with alleviating Spiegel's disability symptoms. Spiegel identifies no overlooked evidence that could fill in the gap.

¶ 43    Although Spiegel asserts that an "accommodation for heavy lifting is [a] reasonable accommodation," he fails to cite record support to show that he was denied an accommodation based on a weightlifting restriction. While such restrictions can lead to accommodations in certain cases, like those Spiegel cited in his brief, he did not demonstrate that leaving his chair at the pool overnight had anything to do with a weightlifting restriction brought on by his disability. Although one doctor recommended that Spiegel not lift more than 15 pounds, Spiegel neither submitted evidence to the Association nor identified evidence for the Commission or this court showing that his disability prevented him from removing his chair from the pool. Nor did any doctor go as far as advising that Spiegel leave the chair at the pool overnight. The Association offered Spiegel a chance to provide that evidence, but he did not.

¶ 44    Finally, Spiegel supports his assertion that his requested accommodation was necessary by citing cases in which landlords or condo associations were required to implement "[f]ar greater accommodations" like moving parking spot or rental unit locations, changing rent payment

methods, and allowing use of mobility assistance devices. But comparing accommodations made for other disabilities to his requested accommodation for his disability is irrelevant. Because accommodation cases are "highly fact-specific" and decided on a case-by-case basis, they provide little guidance unless they are factually on point. *Valencia*, 883 F.3d at 968. Spiegel does not make that showing here. His general comparisons to other accommodations made in other cases does not overcome the absence of evidence showing that leaving his chair by the pool overnight was necessary to alleviate his disability symptoms.

¶ 45    For the foregoing reasons, we cannot say that the Commission abused its discretion when it sustained the dismissal of Spiegel's discrimination charge based on the lack of substantial evidence to support his claims because no evidence showed that leaving his chair at the pool overnight was reasonable or necessary to alleviate symptoms of his disability.

¶ 46                                    III. CONCLUSION

¶ 47    For the foregoing reasons, we affirm the Commission's administrative decision sustaining the dismissal of Spiegel's charge of discrimination.

¶ 48    Affirmed.