UNITED STATES of America, Plaintiff–Appellee,

v.

Michael C. LEVINE, Defendant–Appellant.

No. 99–1291.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1999.

Decided June 14, 1999.

Morris Pasqual (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Glenn Seiden (argued), Seiden & Associates, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Alexsis Incorporated, a firm that helps insurers detect fraud by workers' compensation claimants, was itself the victim of fraud. Alexsis sometimes hires private investigators who try to find out whether an applicant is disabled to the extent claimed. James Batista, a shadowy figure whose connection to Alexsis is not well developed in the record of this case, funneled some of this P.I. work to Professional Protection Services (PPS) and Megco, two businesses in which Michael Levine participated. After Alexsis paid PPS or Megco for a job, Levine gave Batista $680 as a "finder's fee." Batista insisted on cash payment, but Ernest Marinelli, who handled the books, wanted all transactions documented. So Levine arranged for Marinelli to write checks to Myco (which Levine controlled), and Myco issued new checks to fictitious payees, or to real persons who had not provided any services. Levine signed their names, cashed the checks, used some of the proceeds to pay Batista, and kept the rest. Some jobs assigned by Alexsis were never performed at all; the persons listed as the detectives on PPS's and Megco's books testified at trial that they had done no such work. Levine apparently dictated bogus findings that were transmitted to Alexsis. After it paid the bills, Marinelli issued checks to the supposed detectives as compensation for their (nonexistent) services; Levine intercepted the checks, signed the payees' names, and pocketed the proceeds. For these shenanigans Levine has been convicted of mail fraud, see 18 U.S.C. § 1341, possessing and uttering forged checks, see 18 U.S.C. § 513(a), and obstructing justice, see 18 U.S.C. § 1503. The sentence is 30 months' imprisonment.

■ Levine's principal argument is that the judge should have prevented the prosecutor from asking him whether he "forged" signatures on the checks. Testifying in his own defense, Levine conceded that he procured checks payable to Jeff Pokorney, Joe Jensen, and others who had not provided services in connection with the investigations, and then cashed these checks himself. He insisted that this device was just a way to pay Batista or investigators who preferred cash, but in the process Levine admitted each of the steps that the prosecution called forgery: he endorsed the checks using other persons' names, without the payees' consent, and did not transmit the proceeds to them. On cross examination the prosecutor asked Levine whether he had forged the payees' names. Levine contends that the district judge should have sustained his objection, because the questions called for a legal conclusion, see *DePaepe v. General Motors Corp.*, 141 F.3d 715, 717 (7th Cir.1998); the prosecutor's response is that the word "forge" has an established lay usage. See *United States v. Baskes*, 649 F.2d 471, 478 n. 5 (7th Cir.1980).

■ We do not think that either Levine or the jurors would have believed that these questions preempted the definition of forgery in the jury instructions. Levine was free to answer by saying that he preferred a word other than "forgery" to describe his conduct, or that he would describe but not characterize his acts. Indeed, this is what happened; he replied that he "signed" the checks with names other than his own but denied that he "forged" anything. His counsel was free to (and did) argue to the jury that this process was lawful because it occurred with the express or implied consent of the checks' maker, and the named payees were not entitled to the proceeds. Matters of fact often overlap matters of law, however, and characterizations can have legal significance; that the answer to a question may lead to a particular legal conclusion does not put the subject off limits.

■ Levine's real objection to the line of questioning is that the prosecutor was making a rhetorical point (for the facts had been established on direct), using a word freighted with connotations of wrongdoing.

But putting one's own spin on events is a principal use of cross examination. Witnesses can't insist that the prosecutor use euphemisms when inquiring into conduct that the indictment labels a crime. A prosecutor may ask an accused thief whether he stuck up the teller and robbed the bank; he may ask an accused drug peddler whether he sold drugs to an undercover agent; he may ask an accused price-fixer whether he joined a cartel; he may ask an accused killer whether he murdered the deceased. These are functionally identical to the question whether Levine forged signatures on the checks, and all are proper subjects of cross examination, provided only that the judge makes it clear to the jury that neither the questioner nor the witness defines the elements of the offense. See *United States v. Espino*, 32 F.3d 253, 257 (7th Cir.1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a conclusion about the legal consequences of the defendant's conduct, and not just about the existence of a conspiratorial agreement). "Forgery" was an apt description of the acts Levine performed; that the crime also is *called* "forgery" does not close the subject to inquiry.

■■■ Levine's second contention is that the judge improperly interfered with his lawyer's cross examination of the prosecution's witnesses. That the judge "interfered" is clear; time and again the judge told counsel to desist from a line of cross examination and move to another. Once the judge abruptly called a recess, embarrassing counsel, who had his back to both judge and jury and did not notice that they had left the courtroom. The judge should have waited for counsel to turn around; the episode might have implied to the jury that the judge was impatient with the lawyer. Judges should do their best to treat counsel with equanimity while the jury is present. But this judge had ample reason to become impatient with Levine's lawyer and to interrupt his examination of witnesses. Counsel repeatedly ignored the court's orders to move along, insisted on returning to subjects that had been foreclosed, and could not explain why he wanted to pursue lines of inquiry that mystified the judge. Interference with cross examination in these circumstances is fully justified; a judge is entitled to keep the trial moving and confine examination to relevant issues. *United States v. Scott*, 145 F.3d 878, 888 (7th Cir.1998); *United States v. Spivey*, 841 F.2d 799, 802–03 (7th Cir.1988).

One example will suffice. On direct examination, Marinelli described how he calculated the amount of some checks by subtracting one number from another on documents that Levine had prepared. On cross examination defense counsel had Marinelli repeat the calculation. Counsel then announced that he was going to hand Marinelli a pencil, presumably so that the witness could re-check the subtractions. This was puzzling, because Marinelli had performed the arithmetic correctly. The judge interjected: "We are not doing that here. Move on to something else." Defense counsel disobeyed the order and continued: "Well, you testified earlier that if you take these three numbers and subtract them out from 1802, you get 697. I don't quite see that." For the second time the judge instructed counsel to move to another topic; counsel's difficulties performing subtraction did not imply any problems with Marinelli's testimony. But again Levine's lawyer did not comply, stating, "I'm going into the division [of the fees], Judge. This [witness] was asked questions about [his calculations] and I'm entitled to ask about it on cross examination." At this point the judge terminated the examination of Marinelli but informed counsel that he could recall the witness if he had proper questions to ask, and later that day counsel took advantage of that opportunity. Nothing in this sequence interfered with any of Levine's legitimate interests. Insisting that a witness repeat a mechanical arithmetical task—one Marinelli already had performed twice on the stand—is the sort of time-wasting exercise that judges properly prevent. Neither this episode

nor any of the others of which Levine now complains demonstrates that the judge abused her discretion in trial management.

None of Levine's seven other contentions requires comment. One of them—a request that we review the district judge's discretionary decision not to depart downward from the sentencing range calculated under the Guidelines—is not even within our jurisdiction. *United States v. Franz*, 886 F.2d 973 (7th Cir. 1989). We have disregarded that contention and resolved the others against Levine. Courts sometimes dismiss an appeal to the extent that the defendant contests an exercise of discretion in sentencing, but they do not explain how an appeal can be dismissed even in part when the judgment is appealable. Because 18 U.S.C. § 3742(a) limits the issues that a defendant may raise, a court would dismiss for want of jurisdiction if, as in *Franz*, the *sole* issue presented on appeal were a challenge to a discretionary decision not to depart from the guidelines. When the defendant challenges the conviction as well as the sentence, however, we should simply affirm the judgment, while disregarding the issue that § 3742(a) places outside the appellate ken.

AFFIRMED.