# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1604

SHIRLEY HOFFMAN,

*Plaintiff-Appellant,*

v.

CATERPILLAR, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 C 1062—**Joe Billy McDade**, *Chief Judge.*

_____

ARGUED JANUARY 12, 2004—DECIDED MAY 11, 2004

_____

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Shirley Hoffman, who is missing her left arm below the elbow, brought this employment discrimination case under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Hoffman alleged that her employer, Caterpillar, Inc., engaged in unlawful disparate treatment by refusing to train her to operate a high-speed document scanner. The case proceeded to trial and on February 6, 2003, the jury returned a verdict for Caterpillar. Hoffman now appeals, challenging myriad rulings, the jury instructions, and the denial of Hoffman's

motion to disqualify Judge McDade under 28 U.S.C. § 144. We affirm for the reasons outlined below.

## I. History

Hoffman began work in Caterpillar's Optical Services Department ("OSD") in April of 1996. The OSD digitally scans paper and electronic documents for various Caterpillar business units. In 1998, Hoffman requested training on a Fujitsu 3099 document scanner, also know as the "high-speed scanner." Because Hoffman's supervisor, Lynn Cripe, did not believe that a person with only one hand could operate the high-speed scanner at Caterpillar's required production and quality standards, Hoffman's training request was denied. As a result, Hoffman sued Caterpillar, claiming that Caterpillar violated the ADA by engaging in disparate treatment and by failing to accommodate her disability.[1]

After discovery, the district court granted Caterpillar's summary judgment motion as to each of Hoffman's claims. Upon appeal, we reversed only with respect to the disparate treatment claim and remanded for trial.[2] *Hoffman v.*

---

[1] We direct the interested reader to *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 570-72, 77-78 (7th Cir. 2001), for a more detailed explanation of the OSD, Hoffman's job functions, and an additional discrimination claim brought by Hoffman, which was unrelated to the high-speed scanner and dispensed of by summary judgment.

[2] In the interest of clarity, we note that two determinations led this court to affirm the summary judgment with respect to the failure to accommodate claim. First, we held that running the high-speed scanner was a non-essential job function. Second, we held that Caterpillar need not provide accommodations for a non-

(continued...)

*Caterpillar, Inc.*, 256 F.3d 568, 570-71 (7th Cir. 2001) ("*Hoffman I*"). Specifically, we held that "[i]n order to re-cover, Hoffman must show that she is physically capable of running the high-speed scanner, but she is not required to make a separate showing that the denial of training was a materially adverse employment action." *Id.* at 576. Because running the high-speed scanner was a non-essential job function, *see supra* note 2, we indicated that Caterpillar's refusal to train Hoffman amounted to illegal disparate treatment in violation of the ADA only if Hoffman was capable of running the machine at Caterpillar's required levels of productivity. *Id.* at 573, 576.

Upon remand, the district court issued numerous evi-dentiary pre-trial orders and denied the Plaintiff's motion to disqualify Judge McDade (the presiding judge) under 28 U.S.C. § 144. During trial, the court considered various objections and requests, and took steps to ensure that the trial proceeded efficiently and fairly. Prior to closing ar-guments, the court ruled upon permissible closing argu-ments and the jury instructions, and granted a directed verdict for Caterpillar with respect to punitive damages. The jury returned a verdict for Caterpillar. In this appeal, Hoffman contests many of the district court's rulings.

## II.  Analysis

Hoffman raises numerous issues on appeal, which we address in three groups: evidentiary and trial management rulings; challenges to the impartiality of Judge McDade; and the suitability of punitive damages. To begin, we will consider whether the district court abused its discretion

---

(...continued)

essential job function. As such, Hoffman's failure to accommodate claim failed as a matter of law. 256 F.3d at 577.

when it: (1) excluded certain portions of expert testimony offered by Hoffman; (2) refused to prohibit Caterpillar from offering argument and evidence about Hoffman's inability to operate the scanner at the required production levels; and (3) refused to give a "missing witness" instruction and relatedly, prohibited Hoffman from asserting, in closing arguments, that an adverse inference may be drawn against Caterpillar because Caterpillar's expert did not testify. Next, we will (1) review de novo the district court's denial of Hoffman's motion to disqualify Judge McDade under 28 U.S.C. § 144; and (2) consider Hoffman's assertion that the judge's actions at trial were so prejudicial as to deprive Hoffman of a fair trial. And finally, we will review de novo the district court's grant of a "directed verdict" (or a judgment as a matter of law) in favor of Caterpillar on the issue of punitive damages.

### A.  Evidentiary and trial management rulings reviewed for abuse of discretion

#### 1.  Expert opinions regarding Hoffman's ability to operate the scanner

Hoffman challenges the district court's rulings which excluded portions of proposed testimony from Hoffman's expert, Steven Lavender. Specifically, on March 28, 2002, after considering the factors enumerated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-94 (1993), the district court ruled that although neither Hoffman's expert nor Caterpillar's expert would be allowed to offer opinions as to *Hoffman's* ability to operate the high-speed scanner at mandated production levels, both would be allowed to testify *generally* about whether a one-handed person could operate the machine at established standards. The court reasoned that because neither expert had personally observed Hoffman operating the scanner, such testimony could not be based upon "sufficient facts or data" as required under Rule 702 of the Federal Rules of Evidence.

Following the March 28 order, Hoffman received training on how to operate the scanner and on August 22, 2002, was videotaped operating it for an eight-hour period. On February 3, 2003, the first day of trial, Hoffman asked the district court to revisit its March 28 order prohibiting testimony by Lavender about Hoffman's ability to operate the scanner. The testimony should be allowed, the plaintiff reasoned, because Lavender viewed the videotape, and therefore had a sufficient basis to conclude that Hoffman could operate the machine at established standards. The district court denied Hoffman's request. We review this decision for abuse of discretion. *Miksis v. Howard*, 106 F.3d 754, 758 (7th Cir. 1997); *Doe v. Johnson*, 52 F.3d 1448, 1458 (7th Cir. 1995).

Although Lavender had a sufficient basis (i.e., the video-tape) to offer an opinion regarding whether Hoffman could run the machine at set production levels, the district court implied that such testimony could not "assist the trier of fact," as required under Rule 702. The court previously determined that the videotape could be played for the jury and entered into evidence, and consequently, jurors could make a determination for themselves with respect to Hoffman's ability to run the high-speed scanner. Based upon this independent assessment of Hoffman's performance on the scanner, the jury could then draw inferences regarding her ability to meet production levels, and expert testimony would be of no help. The court therefore disallowed the contested portions of Lavender's testimony. We find this reasoning persuasive; the district court did not abuse its discretion.

Moreover, there was an alternative justification for the district court to exclude Lavender's testimony about the plaintiff's ability to operate the machine at set production levels. Hoffman was required to disclose to Caterpillar the basis for all of Lavender's expert opinions. Fed. R. Civ. P. 26(a)(2)(B) ("FRCP") ("[t]he report shall contain a complete

statement of all opinions to be expressed and the basis and reasons therefor"). The court concluded that Hoffman's failure to amend its prior expert disclosures to include the videotape as a basis for Lavender's opinion violated Rule 26, and the violation was not harmless to Caterpillar. Therefore, the court properly excluded the contested portion of Lavender's testimony under Rule 37(c)(1).

In the instant appeal, Hoffman does not expressly challenge whether there was a violation of Rule 26's disclosure requirements. Instead, Hoffman asserts—without authority—that it would have been a "ludicrous" formality to disclose in writing Lavender's reliance upon the videotape since Caterpillar was aware both of the videotape itself and that Lavender would review it. We recently rejected such arguments, stating that the formal requirements of Rule 26 are not pointless, s*ee Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004), and we again do so here.

Moreover, Hoffman presents nothing more than a bald assertion ("There was no surprise to Caterpillar . . . ."), in support of her argument that the district court abused its discretion when it concluded that the Rule 26 violation was not harmless. We disagree. Following the August 22, 2002 videotaping, Hoffman gave no indication of an intention to have the district court revisit its March 28 ruling until the first day of trial, on February 3, 2003. Had the district court reversed its March 28 ruling and allowed Hoffman to present expert testimony as to her ability to operate the scanner at required production levels, Caterpillar would have been harmed in three related ways.

First, because the renewed motion was made on the first day of trial, there was not enough time remaining for Caterpillar to depose Lavender on this *new basis* for his opinion. Relatedly and second, Caterpillar would have been hard-pressed to develop alternate cross-examination

strategies (because the obvious approach—attacking Lavender's credibility because he never personally observed the plaintiff operating the machine in question— would be ineffective). And third, Caterpillar would have a distressingly small amount of time to develop expert testimony to counter Lavender's. In fact, Caterpillar indicated that it decided to entirely forego expert testimony in reliance upon the March 28 order, presumably because it felt that the jury would have no problem assessing Hoffman's performance after observing the videotape. We therefore find that the district court did not abuse its discretion when it concluded that the Rule 26 violation was not harmless.[3]

---

[3] Hoffman repeatedly complains that there would be no harm to Caterpillar because Caterpillar understood that Lavender would review the videotape and then conclude that Hoffman could operate the scanner at the required production levels. But without Rule 26 disclosures, this court cannot be *certain* that Caterpillar was so informed (unless, of course, counsel for Caterpillar had the ability to divine the thoughts and opinions of Lavender, *see infra* next paragraph). To avoid such uncertainty is exactly what Rule 26 is designed to do. It guarantees, to both parties, reciprocally equal knowledge about what the opposing expert has (and more importantly has *not*) based her opinions upon and exactly what those opinions are. And for these reasons, we recently lauded compliance with the letter—and not only the spirit—of Rule 26. *See Musser*, 356 F.3d at 756-58.

Hoffman also implies that the videotape was so dispositive— even to a non-expert—as to make any conclusion other than the aforementioned laughable. But if this is true, which we do not determine, then the district court was unquestionably correct when it excluded Lavender's testimony because it could not assist the trier of fact! And if this is not true, which, given the jury's verdict, we suspect is the case, then the Rule 26 disclosures were indeed necessary! Either way, Hoffman's challenge fails.

## 2. Caterpillar's evidence and argument that Hoffman could not meet production levels

Hoffman also argues that Caterpillar should have been prohibited from presenting evidence and argument about Hoffman's inability to operate the high-speed scanner at the production levels required by Caterpillar because it would be "extremely confusing and prejudicial to the jury." As a preliminary point, we note that neither the text nor the required appendix of Hoffman's brief to this court cited or otherwise referenced any specific order of the district court or any motion in limine addressing this issue—and our review of the record revealed none.

More importantly, Hoffman conveniently ignored the fact that her ability to run the machine at the required production levels was the primary issue at trial.[4] *See Hoffman I*, 256 F.3d at 573, 576. It is nonsensical to suggest that counsel for either party should be prevented from making an argument or presenting evidence as to the ultimate issue in a case. Therefore, assuming there is in fact some order of the district court denying Hoffman's phantom motion to preclude Caterpillar from making any reference to

---

[4] Hoffman's complaints are implicitly based upon an incorrect understanding of the elements of her disparate treatment claim, as modified in *Hoffman I*. Hoffman seems to have concluded that the sole issue to be determined at trial was whether she could operate the machine—at any level of productivity. Not only does this ignore the required threshold showing of disability as defined under the ADA, *see infra* note 7, it also ignores our statement in *Hoffman I* that "the ADA [does not] mandate that Caterpillar must tolerate a drop in productivity in order to allow Hoffman to run the high-speed scanner." 256 F.3d at 573. At trial Hoffman not only needed to prove that she was both "disabled" and able to operate the scanner, but also that she could meet Caterpillar's established productivity standards.

Hoffman's inability to operate the high-speed scanner at set production levels, we now expressly find there was no error in such a denial.[5]

### 3. The "missing witness"—Caterpillar's expert Jodi Glunz

Hoffman next argues that because Caterpillar decided not to call its expert Jodi Glunz, the district court abused its discretion when it refused to give a "missing witness" instruction and refused to allow Hoffman to encourage the jury to draw an adverse inference based upon Glunz's absence. The district court has broad discretion in determining whether to give a missing witness instruction, *see Doe v. Johnson*, 52 F.3d 1448, 1458 (7th Cir. 1995), and in supervising closing arguments to ensure that counsel does not make reference to matters not in evidence, *United States v. Brisk*, 171 F.3d 514, 524 (7th Cir. 1999); *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 727 (7th Cir. 1994).

Hoffman's first challenge to the district court's refusal to tender the missing witness instruction is based entirely upon *Shvartsman v. Septran, Inc.*, 711 N.E.2d 402 (Ill. App. Ct. 1999), a case not binding upon this court. Regardless, and contrary to Hoffman's understanding of the case, *Shvartsman* supports the district court's determination. The

---

[5] Hoffman also intimates that the district court abused its discretion when it allowed Hoffman four hours of training and four-and-a-half days of practice on the high-speed scanner, instead of a two-week training session, before the eight-hour videotaped test. But at a pretrial conference held on August 1, 2002, Hoffman not only expressly agreed to these particular conditions, but also stated that if the district court would allow an in-court demonstration in front of the jury, Hoffman would operate the machine without any training, and that in any case, two weeks of training was unnecessary.

district court correctly refused to give the instruction because Caterpillar offered entirely reasonable explanations about why Glunz was not called as a witness: (1) the district court's March 28, 2002 order restricted the testimony of all experts to the abilities of one-handed persons generally and hence, Glunz's testimony could not have been very probative of the ultimate issue; and (2) the jury could observe the videotape of Hoffman operating the scanner and draw inferences for itself, and thus, the testimony of Glunz would have been unhelpful and unnecessarily duplicative. *See supra* Part II.A.1. Consequently, there was no error.

Second, Hoffman asserts that because three witnesses mentioned Glunz's name and that she was an expert for Caterpillar, the district court's decision to prohibit Hoffman from urging the jury at closing to draw an adverse inference based upon Caterpillar's decision not to call Glunz was an abuse of discretion. But as we noted above, Caterpillar gave at least two cogent reasons for its decision not to call Glunz. Moreover, at trial Caterpillar never sought to introduce Glunz's report or discuss it in any way. Despite Hoffman's protestations to the contrary, there was absolutely no evidence indicating that Glunz had formed an opinion detrimental to Caterpillar. Allowing Hoffman to make an argument that Glunz's testimony would have been unfavorable to Caterpillar, "would allow the jury to speculate about the meaning of a great deal of non-evidence." *United States v. Keplinger*, 776 F.2d 678, 703 (7th Cir. 1985). "We see no constructive purpose to be served by such a procedure and conclude the district court did not abuse its discretion in preventing commentary on [Glunz's] absence in closing argument." *Id.*

### B. Judge McDade

### 1. Motion to Disqualify under 28 U.S.C. § 144

At a pretrial hearing on March 22, 2002, the district court indicated that it was going to grant Caterpillar's motion in

limine to exclude all testimony from Hoffman's expert witness. After the court was informed that Hoffman had just filed a responsive memorandum, the court decided to forego an immediate ruling. Subsequently, the district court limited the testimony of both parties' experts to opinions regarding whether a one-armed person could operate the high-speed scanner.

On April 24, the plaintiff Hoffman was working at Caterpillar as an operator in the communications department. Sometime that morning, she received a call from someone who identified herself as calling from Judge McDade's office. The caller requested the telephone number for Glen Barton, the Chief Executive Officer and Chairman of the Board for Caterpillar, which Hoffman then relayed to the caller.

Later that afternoon, an unscheduled telephone conference was held between Judge McDade, counsel for Hoffman, and counsel for Caterpillar. During that conference, the parties discussed various pretrial issues and the district court granted Caterpillar's motion for a bifurcated trial, clarified that Hoffman would be required to prove that she was disabled within the meaning of the ADA, and set a summary-judgment briefing schedule.

Based upon the foregoing events, Hoffman decided to file a motion to disqualify Judge McDade under 28 U.S.C. § 144. But prior to that filing, Hoffman's counsel learned that Judge McDade was a member of Bradley University's Board of Trustees and its men's basketball coach search committee. In his capacity as a search committee member, Judge McDade had been involved in a "highly publicized" dispute with Bradley University President, Dr. David Broski, concerning the selection of a basketball coach. Barton, Caterpillar's CEO and President, is also a member of Bradley University's Board of Trustees. Notwithstanding

this information and without any further inquiry, on April 26, Hoffman filed a § 144 motion to disqualify.

Under § 144,

> [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice against him or in favor of any adverse party, such judge shall proceed no further therein . . . . The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists.

28 U.S.C. § 144. "A trial judge has as much obligation not to recuse himself when there is no occasion for him to do so [under § 144] as there is for him to do so when the converse prevails." *United States v. Ming*, 466 F.2d 1000, 1004 (7th Cir. 1972). We review the district court's denial of Hoffman's motion de novo.

The facts alleged in Hoffman's motion (and accompanying affidavits)[6] must be legally sufficient and demonstrate the judge's personal bias or prejudice against a party. *See United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985). A court may only credit facts that are "sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993). The factual allegations must fairly support the charge of bias or impartiality and must be specific— including definite times, places, persons, and circumstances. *Balistrieri*, 779 F.2d at 1199. And while a court must assume the truth of the factual assertions, it is not

---

[6] The district court correctly pointed out that Hoffman improperly submitted three affidavits in support of her motion, instead of submitting only one as required under § 144.

bound to accept the movant's conclusions as to the facts' significance. *Id.* at 1199-1200. Moreover, "[b]ecause the statute is heavily weighed in favor of recusal, its requirements are to be strictly construed to prevent abuse." *Sykes*, 7 F.3d at 1339; *see also United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (holding that § 144 affidavits should be strictly construed against the affiant and that movants bear a substantial burden to show actual partiality).

Unlike a motion to recuse under 28 U.S.C. § 455, which simply requires the reasonable appearance of bias, a motion to disqualify under § 144 requires a showing of *actual bias*. *See Balistrieri*, 779 F.2d at 1201. And only personal animus or malice on the part of the judge can establish actual bias. *See id.* Moreover, judicial rulings alone will almost never constitute a valid basis for disqualification under § 144. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

Hoffman's motion recounted the events described above, but did not describe the non-litigation circumstances which explain the communications between Judge McDade and Barton. Hence, although the facts alleged were incomplete, Hoffman met the minimal requirements of § 144 because the affidavits referenced specific times, people, places, and circumstances. But Hoffman cannot meet § 144's requirement of actual bias; her allegations are mere conjecture and supposition. No personal animus or malice towards Hoffman is reflected in any of the court's rulings, *see infra* Part II.B.2. Furthermore, given the controversy surrounding the men's basketball coach at Bradley University, simply because Judge McDade's office and Barton's office exchanged phone calls on the same day that the district court made various rulings, only one of which is even ar-

guably adverse to Hoffman,[7] does not support the inference that Judge McDade was impermissibly biased against Hoffman.

First, the record reveals that the district court engaged in measured and considered deliberations in order to come to a determination regarding the rulings Hoffman has attempted to cast doubt upon. Second, the existence of non-litigation-related reasons for Judge McDade and Barton to converse allays any appearance of impropriety which may have arisen as a result of the April 24 phone calls. Third,

---

[7] During the April 24 telephone conference, the district court granted Caterpillar's motion to bifurcate the trial (into liability and damages phases), clarified that Hoffman would be required to prove that she was disabled within the meaning of the ADA, and set a summary-judgment briefing schedule. We fail to see how a briefing schedule could be adverse. And prior to trial, the court reversed its decision to bifurcate. With respect to Hoffman's assertion that the district court "increased" her burden of proof at trial, we disagree.

The district court, after careful analysis and after allowing for both parties to extensively comment and discuss this issue at the April 24 hearing, correctly determined that Hoffman was required to prove that she was "disabled" as defined under the ADA. This ruling did not "increase" Hoffman's burden—it had been an element of her disparate treatment claim since filing. The district court had not based its previous grant of summary judgment upon a finding that Hoffman was not disabled, and thus, Caterpillar did not raise this issue upon appeal (and couldn't have waived the issue either), and we refrained from considering it in *Hoffman I*. Hence, the question of whether Hoffman was "disabled" had not been substantively disposed of, and it remained Hoffman's burden to prove. Moreover, we fail to see how Hoffman can now claim that this was an adverse ruling tending to show malice or bias since, during the April 24 phone conference, Hoffman (through counsel) stated, "I don't honestly believe that I'm going to have a hard time proving that a lady with one hand is disabled under the ADA . . . ."

nothing in the record suggests that Judge McDade's concerns over the Bradley University basketball coach dispute would predispose him to either favor or disfavor Caterpillar (i.e., who knows if Barton supported University President Broski's coach selection instead of the Judge's, or vice versa?). Fourth, nothing in the record even remotely suggests that Judge McDade and Barton ever conversed about any aspect of the Hoffman case (in fact, we do not know whether the two actually even spoke that day).

We therefore affirm the district court's denial of Hoffman's motion to disqualify.


### 2.  Judge McDade's conduct during trial

In the face of the trial transcript, Hoffman offers the extraordinary argument that Judge McDade's actions in court were so "hostile," "inappropriate," "inflammatory," "offensive," and grossly abusive as to deprive Hoffman of a fair trial. We do not deign to address each of the seemingly innumerable slights that Hoffman perceives she suffered at the hands of the district court. Each of these complaints is meritless, some bordering on the frivolous.

The trial court in this case diligently exercised its broad powers in order to efficiently and fairly manage trial proceedings and confine examination to relevant issues. To that end, the trial court was justified in interrupting counsel, offering explanations to the jury, and questioning witnesses in order to clarify certain points. *See United States v. Simpson*, 337 F.3d 905, 908 (7th Cir. 2003); *Susan Wakeen Doll Co., Inc. v. Ashton-Drake Galleries*, 272 F.3d 441, 445 (7th Cir. 2001); *United States v. Levine*, 180 F.3d 869, 872 (7th Cir. 1999); *Wallace v. Mulholland*, 957 F.2d 333, 337 (7th Cir. 1992); *United States v. Briggs*, 700 F.2d 408, 414-15 (7th Cir. 1983). Moreover, that Judge McDade ruled more often for Caterpillar "may show nothing more than that [Caterpillar] ha[d] the better case or the abler

lawyer."[8] *Cooper v. Casey*, 97 F.3d 914, 918 (7th Cir. 1996). Hoffman also conveniently neglects to reference the numerous instances in which the district court found in her favor. We conclude that the district court at no time abused its discretion in conducting the trial in this case.

### C. Punitive damages

Hoffman lastly challenges the district court's grant of a directed verdict as to punitive damages, which determined that there was insufficient evidence to support such damages and prevented the jury from even considering such an award. As an initial matter, we point out that the 1991 amendments to the Federal Rules of Civil Procedure eliminated "directed verdicts" as such. A "directed verdict" motion should be treated as a motion for a judgment as a matter of law under Rule 50. Fed. R. Civ. P. 50 advisory committee's notes, 1991 amendment ("If a motion is denominated a motion for a directed verdict . . ., the party's error is merely formal."). Under Rule 50(a)(1), "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party . . . ." Here, the district court's comprehensive analysis of whether Hoffman put forth enough evidence at trial to support a reasonable jury's award of punitive damages demonstrates that the court applied Rule 50(a)(1). Consequently, we review this

---

[8] In this respect, we note that Hoffman's brief to this court not only contained irrelevancies and misleading assertions, it also lacked appropriate citation to the record and applicable case law. Moreover, it is apparent that counsel has stepped beyond the bounds of zealous representation of his client and is engaged in a personal vendetta against an experienced judge who ruled against his client.

determination de novo. *See Knapp v. Eagle Prop. Mgmt. Corp.*, 54 F.3d 1272, 1281 (7th Cir. 1995).

However, as it turns out, the jury found in favor of Caterpillar, thereby mooting the issue of damages. Therefore, we need not discuss the merits of Hoffman's wholly conclusory arguments as to this issue. Even if the district court erred when it determined that no reasonable jury could award punitive damages to Hoffman—which we do not even remotely suggest—the error was harmless. *See id.* at 1281 ("any error in refusing a punitive damages instruction for Knapp's racial discrimination claims is harmless given the jury's verdict for defendants on the underlying issues").

### III.  Conclusion

The district court's judgment is hereby AFFIRMED.


A true Copy:

      Teste:


               _____
               *Clerk of the United States Court of Appeals for the Seventh Circuit*