NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted June 27, 2012[*]
Decided June 29, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-1189

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-CV-590-JPS |
| WHPC-DWR, LLC, et al., *Defendants-Appellees.* | J.P. Stadtmueller, *Judge.* |
| APPEAL OF: RICHARD SINGSIME, *Intervenor-Appellant.* | |

**O R D E R**

Richard Singsime claims that the owner and managers of an apartment building violated the Fair Housing Act, 42 U.S.C. §§ 3601–19, by not designating for his use one of the parking spaces closest to the building entrance. Singsime had complained to the United States Department of Housing and Urban Development, which investigated and found

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

reasonable cause to believe that a discriminatory practice had existed.
*See id*. § 3610(a)(1), (g)(1). On that basis the Secretary of HUD issued an administrative charge of discrimination. *See id*. § 3610(g)(2)(A). Singsime could have sued in federal court even without that administrative charge, *see id*. § 3613, but with the charge in hand he gained the additional options of vetting the dispute before an Administrative Law Judge or, alternatively, compelling the Attorney General to sue on his behalf,
*see id*. § 3612(a), (b), (*o*)(1). Singsime elected the last of these options, yet after the United States filed suit he hired his own lawyer and intervened, citing a statutory provision authorizing any "aggrieved party" to intervene in a suit brought by the Attorney General.
*See id*. § 3612(*o*)(2). Singsime did not substitute himself as plaintiff, and neither did he object when the United States settled the suit. Even so, the Consent Order signed by the district judge allowed Singsime to continue litigating as if there had been no resolution of his claims, and eventually he lost at summary judgment. Singsime, who is now pro se, appeals from that adverse decision.

The facts, which we recite in the light most favorable to Singsime, are undisputed unless otherwise noted. *See Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 817 (7th Cir. 2011). From October 2008 until November 2009, Singsime lived at Village Square, an 18-unit, HUD-subsidized apartment building in Walworth, Wisconsin, that rents exclusively to tenants who are 62 and older or disabled. Village Square is owned by WHPC-DWR, LLC, a nonprofit corporation devoted to providing affordable housing, and managed by Cardinal Capital Management, Inc.

Most tenants at Village Square have difficulty ambulating, and some use wheelchairs, walkers, or other assistive devices. Singsime suffers, too, from conditions impeding his ability to walk, including idiopathic peripheral neuropathy and peripheral vascular disease. He uses a cane and wears leg braces but, like ten or eleven other residents, owned a car while living at Village Square. Singsime had a placard authorizing him to park in spaces designated for the disabled, s*ee* WIS. STAT. § 343.51, but so did three, and sometimes four, other residents.

When Singsime moved in, Village Square was allocating its twelve parking spaces on a "first come, first served" basis. No spot was permanently assigned. The spaces were divided among two rows. The first row, located directly in front of the building, had five spaces. Of those the space closest to the door of the building had a curb cut and was identified, by a sign and pavement markings, as reserved for the disabled. The complaint alleges that the adjacent space also was marked on the pavement as reserved for the disabled but did not have a sign. An understanding had been reached among the existing residents that use of the space with the curb cut would be limited to temporary parking;

residents and visitors with cars, including those residents with "handicapped" placards, parked in other spaces so that the spot closest to the door would be left open for emergency vehicles and to accommodate drivers transporting disabled or infirm residents. The second row of spaces, with seven spots, ran parallel to the first and was separated from the building only by the width of the driving lane between the two rows of spaces. No suggestion has been made that Village Square's parking configuration violated state or local law, the Rehabilitation Act or the Americans with Disabilities Act, or HUD regulations governing subsidized housing.

Singsime did not know about the customary use of the handicapped space and began leaving his truck there. But soon an assistant property manager, Cardinal Capital employee Dee Luebke, called him to the office and explained the established practice. According to Singsime, when he asked Luebke where he should move his truck, she pointed to the row of seven spaces and said to put it "on the other end" in the open spot farthest from the entrance. Singsime began parking exclusively in that space under the mistaken belief that parking spaces were permanently assigned.

That simple misunderstanding soon escalated into litigation. In the weeks following, Singsime twice asked Luebke if he could have a closer parking space (she denies that these conversations took place, but we accept Singsime's version as we must on a motion for summary judgment). Singsime did not request a specific space for his exclusive long-term use. According to Singsime, Luebke responded, not by telling him that he must continue parking where he was, but by reminding him that only short-term parking was allowed in the first handicapped space. The two disagree about whether Luebke ever said explicitly that Singsime could park anywhere else under the "first come, first served" policy—she says yes, he says no. When Luebke purportedly said that she was powerless to change that policy, Singsime telephoned her boss, Robert McCormick. That conversation was in late October 2008, and at summary judgment Singsime did not contradict McCormick's deposition testimony that *he* told Singsime that the parking spaces were unassigned. Singsime admits that spaces closer to the door typically were open when he sought to park, but even after speaking with McCormick he continued parking in the farthest spot. His use of that space did not change even after he slipped and fell in the parking lot in December 2008.

Meanwhile, before calling McCormick, Singsime already had contacted HUD. After speaking with McCormick, he filed his administrative complaint asserting that the building owner along with Cardinal Capital, Luebke, and McCormick had denied him a reasonable accommodation in the form of an accessible parking space. HUD's administrative charge of discrimination does not assert that Singsime asked Luebke or McCormick to assign him a particular parking space, nor does the HUD charge say that Singsime was unaware that he,

like the other seventeen elderly or disabled tenants at Village Square, could park long-term in any open space except for the handicapped spot closest to the door. Yet in the civil complaint filed on Singsime's behalf (and echoed by Singsime when he intervened in the lawsuit), the United States alleges that Singsime had asked for an "assigned parking space near the building entrance." The suit claims that the defendants refused this purported request and thus constructively denied a dwelling to Singsime on account of his handicap, *see* 42 U.S.C. § 3604(f)(1)(A); discriminated against him in the terms of rental, *see id.* § 3604(f)(2)(A); and refused a reasonable accommodation necessary to afford him equal enjoyment of the apartment building, *see id.* § 3604(f)(3)(B). The United States sought a declaration that the defendants had violated the FHA and an injunction prohibiting them from discriminating on the basis of disability. Singsime apparently intervened to press also for compensatory and punitive damages, but he did not add to, or alter, the existing claims.

After discovery the United States settled with the defendants. The Consent Order acknowledges that the United States had sued "on behalf of" Singsime, that § 3612(*o*) was the only basis for the Attorney General's involvement, and that the settlement covered "all claims asserted by the United States." As noted, Singsime had not asserted any additional claims—he simply wanted damages—but he did not object to the settlement. The defendants did not admit liability but agreed to (1) formalize and distribute to residents a "reasonable accommodation policy," (2) change the Village Square parking policy to allow any qualified individual with a disability to park long-term in either of the two handicapped spaces, and (3) create additional handicapped spaces if necessary and feasible. As a result of this settlement, Village Square designated three spaces for drivers with "handicapped" plates or placards but had to reduce the overall number of parking spaces to ten to accommodate the additional, wider handicapped spots. This modification left only three parking spaces on the side of the lot closest to the building.

By its terms the Consent Order did not resolve Singsime's intervention in the lawsuit, so the defendants moved for summary judgment. They argued, first, that Singsime's pivotal factual allegation in the lawsuit—that he requested but was refused an "assigned parking space near the building entrance"—lacked evidentiary support. Instead, the defendants pointed out, the evidence at summary judgment established that Singsime had asked only to park closer than the space farthest from the building's entrance; that accommodation already was satisfied under Village Square's "first come, first served" parking policy, which McCormick made clear to Singsime before he filed his administrative complaint with HUD. The defendants further argued that, even if Singsime had produced evidence that he requested an assigned space closer to the building entrance, that accommodation would not have been reasonable at Village Square because the lot was small and many other disabled residents would be disadvantaged. In granting summary judgment for the defendants, the district court agreed with the defendants that Singsime

could not establish a violation of the FHA because it was undisputed that he knew he could park in the open spaces closer to the building entrance and had never asked that one of those spaces be assigned to him for his exclusive use. The district court reasoned that Village Square could not have refused Singsime the same "first come, first served" access to the closest spots enjoyed by all residents but did not address the defendants' contention that, consistent with the FHA, they could have refused to *assign* Singsime a closer space if he had asked for that accommodation.

Singsime, now proceeding pro se, insists that the district court erred in granting summary judgment because material issues of fact remain. To prevail on an FHA accommodation claim, a disabled plaintiff must establish that he requested and was denied an accommodation that was both reasonable and necessary to afford him an equal opportunity to use and enjoy his dwelling. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (en banc). Under our circuit's burden-shifting framework, a plaintiff cannot establish a prima facie case of discrimination without showing that the accommodation he sought is reasonable on its face. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002).

We agree with the district court that no jury reasonably could find for Singsime on the evidence presented at summary judgment, but we are puzzled that a lawsuit filed by the United States to vindicate claims specific to Singsime continued to summary judgment after an unopposed settlement of those very claims. This is not a situation where an aggrieved party has intervened in litigation filed independently by the United States to address a pattern or practice of disability discrimination, *see* 42 U.S.C. § 3614(a), (e), or because the Secretary of HUD referred the matter for enforcement consideration, *see id*. § 3614(b), (e). And neither is this lawsuit one where the United States has intervened in an aggrieved party's private-enforcement action to vindicate issues of "general public importance." *See id*. § 3613(a)(1)(A), (e). In all of those situations the United States and the aggrieved party might have differing claims that one or the other should be free to settle without prejudicing the right of the other to proceed. *See United States v. Katz*, No. 10 Civ. 3335, 2011 WL 2175787, at *6 (S.D. N.Y. June 2, 2011); *United States v. Koch*, No. 8:03CV406, 2006 WL 1720489, at *2 (D. Neb. June 20, 2006); *Cohen v. Twp. of Cheltenham, Pa.*, 174 F. Supp. 2d 307, 310 (E.D. Pa. 2001). Yet here the United States became a participant only because Singsime exercised his right under § 3612(*o*)(1) to compel the Attorney General to sue on his behalf, and as the complaint filed by the United States makes explicit, the United States indeed was acting on Singsime's behalf. When Singsime then intervened, he did not expand on the claims brought by the United States; he adopted them. So it seems odd that Singsime, after intervening, could both allow the United States to settle claims pursued on his behalf and then, having failed to object to the settlement, not be bound by it.

But this result is not questioned by the defendants, so we move to the merits. In his appellate brief Singsime does not identify record evidence supporting his assertion that he requested accommodation in the form of an assigned space closer than the spot he had been using. His deposition testimony, construed in the most favorable light, establishes that he asked only for leeway to park closer to the door, not for an assigned spot. Singsime might have thought that Luebke should read more into his words, but a request for accommodation must be specific enough to apprise the other party of the relief sought. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998) (holding that summary judgment was warranted in case brought under ADA because plaintiff's requested accommodation was too vague); *see also Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003) (noting that requirements for establishing failure to accommodate are same under ADA and FHA); *Oconomowoc Residential Programs,* 300 F.3d at 783 (same). And since the evidence is undisputed that McCormick told Singsime he was free to do exactly what he asked to do—park closer to the door—the defendants could not have violated the FHA because they did not deny his requested accommodation.

It follows that, because Singsime's lawsuit is unsupported factually, we need not address the defendants' further contention that forcing Village Square to give Singsime exclusive use of a space close to the door would not have been a *reasonable* accommodation under the FHA. Although HUD regulations interpreting the FHA assume that in some circumstances a "first come, first served" parking policy must yield to accommodate residents with impaired mobility, *see* 24 C.F.R. § 100.204(b)(2)*; United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994), the facts of this case are readily distinguished from the example posed in the regulations of a 300-unit apartment complex with 450 parking spaces. Village Square had twelve spaces for eighteen apartments which can be occupied *only* by persons who are older or disabled, and Singsime has never explained how preferring him with an assigned space at or near the door would not have discriminated against other tenants given the ratio of disabled residents to close parking spaces. Whether on these facts the FHA would have required giving Singsime an exclusive space is a question for another day.

Finally, Singsime suggests that the district judge may have been prejudiced because a former law clerk represented the United States in this action. It is "common knowledge in the profession that former law clerks practice regularly before judges for whom they once clerked," *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997), but Singsime's concern is particularly puzzling because the United States—and thus the judge's former clerk—was advocating for Singsime, not the defendants. At any rate, Singsime waived this argument because he did not seek recusal or move to disqualify the judge in the district court, *see Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, 231 F.3d 360, 363 (7th Cir. 2000), and

the record contains no evidence of actual bias, *see Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004).

Accordingly, the judgment of the district court is **AFFIRMED**.